UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
:
JINHE CAPITAL LIMITED, a British Virgin :
Islands Corporation, :
:
                          Plaintiff, :
:
                          vs. : **COMPLAINT**
: **AND JURY DEMAND**
SINGULARITY FUTURE TECHNOLOGY, :
LTD., a Virginia Corporation, f/k/a Sino- :
Global Shipping America, LTD., :
:
                          Defendant. :
:
------------------------------------------------------------ X

      Plaintiff Jinhe Capital Limited ("Jinhe" or "Plaintiff"), by and through its attorneys, Sichenzia Ross Ference LLP, as and for its Complaint against Defendant Singularity Future Technology, Ltd., f/k/a Sino-Global Shipping America, Ltd. ("Singularity" or "Company"), alleges as follows:

## PRELIMINARY STATEMENT

      1.     This is an action on behalf of Jinhe to recover damages caused by Singularity's breaches of contract.

      2.     In November 2021 Singularity and Jinhe entered into a negotiated, arms-length Financial Advisory Agreement ("Agreement") under which Jinhe agreed to assist Singularity with finding investors for Singularity's December 2021 private stock offering. In exchange, Singularity agreed to: issue 500,000 restricted shares of Singularity common stock ("Shares"), in lieu of cash, as payment to Jinhe; and assist Jinhe in having the restrictive legends on the Shares removed in or about July 2022 so that Jinhe could sell the Shares into the public market for cash proceeds.

3. Singularity breached the Agreement by failing to file its required periodic reports (e.g., Form 10-Q) with the Securities and Exchange Commission ("SEC"), rendering a key, bargained-for term of the SPA – i.e., the opportunity to timely receive unrestricted, free-trading Shares – a nullity.  Singularity further failed and refused to cure the Company's filing deficiencies, despite that the Company has had, at all relevant times, ample financial resources to do so, in order to frustrate Jinhe and destroy the benefit of the original bargain.  Because Singularity failed to honor and breached the terms of the Agreement, Jinhe is currently unable to remove the restrictive legends on its Shares and sell them into the public market.  Instead, Jinhe holds useless "paper."

4. As a result of Singularity's wrongful conduct, Jinhe is entitled to an award for damages.

## THE PARTIES

5. Plaintiff Jinhe Capital Limited ("Jinhe") is a British Virgin Islands corporation having its principal place of business located in Tortola, British Virgin Islands.

6. Upon information and belief, Defendant Singularity Future Technology Ltd., f/k/a Sino-Global Shipping America, Ltd. ("Singularity"), is a Virginia corporation having its principal place of business located at 98 Cutter Mill Road, Suite 322, Great Neck, New York.  Singularity is a public company trading on the Nasdaq Global Markets Exchange under the ticker symbol SGLY (formally SINO).

7. For diversity purposes, Singularity is a citizen of Virginia and New York.

8. For diversity purposes, Jinhe is a subject of a foreign state and is not a citizen of any state in the United States of America.

**JURISDICTION AND VENUE**

9. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship between Jinhe and Singularity and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(3) and (d), as Singularity is subject to personal jurisdiction in this district.

**STATEMENT OF FACTS**

**I.      The Agreement between Jinhe and Singularity**

11. In November 2021, Singularity retained Jinhe to provide general financial advisory services to Singularity.[1]

12. In consideration for these services, Singularity was to pay Jinhe "compensation of 500,000 restricted shares of the Company's common stock," as provided in paragraph 3 of Agreement.

13. The Agreement also stated in paragraph 1 that Jinhe "may provide" other services: "(a) Assist the Company [in] identify[ing] potential investors in its private placement; (b) Assist the Company in its communication with potential investors; (c) Provide such other advisory services upon which the parties may mutually agree." Jinhe was entitled to the Shares whether or not it provided the other services, as stated in paragraph 1 of the Agreement.

14. Singularity's compensation to Jinhe took the form of restricted Shares of Singularity common stock. On issuance, they would bear a "restrictive legend" preventing Jinhe from selling the Shares into the public market until Singularity's transfer agent removed the legends.

---

[1] The Agreement, dated November 10, 2021, is attached as Exhibit 1.

- 3 -

15. The parties expressed in the Agreement their intention for Jinhe to ultimately receive and possess unrestricted Shares that Jinhe could sell into the public market in accordance with SEC regulations.

16. Singularity contractually agreed to, at Jinhe's request, "use its best efforts to promptly deliver an opinion of its counsel to the transfer agent to remove the restrictive legend from the Shares pursuant to Rule 144 so long as all the conditions under Rule 144 have been satisfied."

17. Rule 144 is a safe harbor from registration provided under 17 CFR § 230.144 ("Rule 144"), a regulation promulgated under the Securities Act of 1933.

18. Under Rule 144, Jinhe could seek to remove the legends six months after receipt of the Shares ("Holding Period") if Singularity remained compliant with it public reporting requirements.

19. Typically, an issuer's transfer agent will remove restrictive legends upon receipt of an opinion of counsel ("Counsel's Opinion") stating principally that the owner of the shares satisfied its required Holding Period and that the issuer of the shares was current with its periodic reporting obligations.

**II.     Jinhe Fulfills Its Obligations and Receives Restricted Singularity Shares**

20. In November and December 2021, Jinhe expended time, money, and resources finding and introducing potential investors to Singularity. Six investors subsequently invested over $10.5 million into Singularity pursuant to a Securities Purchase Agreement dated December 14, 2021.

21. Jinhe fulfilled its obligations under the Agreement.

22. On or about January 24, 2022, Singularity's transfer agent TranShare issued 500,000 Shares of restricted stock to Jinhe.

23. Jinhe could sell the Shares into the public market on or about July 25, 2022, after the Holding Period expired and Singularity's transfer agent removed their restrictive legends, as long as Singularity maintained its practice of filing its SEC-mandated periodic reports as it was duty-bound to do.

### III. Singularity Fails to File Required Reports, Rendering the Shares Nearly Worthless

24. After February 2022, and after Jinhe fulfilled its obligations under the Agreement and received the Shares, Singularity stopped filing its required periodic public reports.

25. Singularity was obligated to file with the SEC a Form 10-Q relating to the fiscal quarter ending March 31, 2022 by May 16, 2022, but it did not do so.

26. Rather, on May 17, 2022, Singularity filed a Form NT 10-Q, in which it represented to the SEC, the Nasdaq Stock Market LLC ("Nasdaq"), and the investing public that it would file its Form 10-Q within five days. Singularity also stated in the Form NT 10-Q that it suffered "a net loss of approximately $5.1 million for the three months ended March 31, 2022, an increase of approximately 46.0%, as compared to $3.5 million for the same period in 2021."

27. On May 24, 2022, Singularity received a notice of delinquency from the Listing Qualifications Department of Nasdaq notifying Singularity of its filing noncompliance under Nasdaq List Rule 5250(c)(1) ("Delinquency Notice"). Singularity disclosed the Delinquency Notice in a Form 8-K the next day, revealing that Singularly had 60 days to submit its remedial plan, at which point Nasdaq *could* grant an extension to file its Form 10-Q to November 21, 2022. As stated in Singularity's accompanying press release, if Singularity "fails to timely regain

compliance with [Rule 5250(c)(1)], the Company's common stock will be subject to delisting from Nasdaq."

28. According to the timeline presented in the Form 8-K, Singularity had until July 23, 2022 to submit a plan to Nasdaq. As of the date of this filing, they have made no public filing to evidence compliance with the Delinquency Notice.

29. Since then, Singularity failed to file its Form 10-Q for the second quarter ended June 30, 2022 (due August 15, 2022).

30. To date, Singularity has refused to file its required public reports, despite receiving a Delinquency Notice from Nasdaq threatening to delist the company due to its failure to stay current with its periodic reporting obligations.

31. Singularity had and, on information and belief, has the resources to become compliant with Nasdaq and with the SEC's periodic reporting requirements. It stated in the last Form 10-Q that the Company filed on February 14, 2022 that it had over $51 million in cash as of December 31, 2021, with around $16 million in outstanding liabilities.

32. Singularity's failure caused Jinhe to suffer damages, despite Jinhe's performance of the Agreement.

33. Jinhe cannot convert its restricted Shares into free-trading stock because Singularity did not continue to meet its required reporting obligations to the SEC.

34. Jinhe's failure to comply with the terms and rule-based deadlines set forth in the Delinquency Notice, which will result in the delisting of Singularity common stock on Nasdaq, will irreversibly destroy the benefit of Jinhe's bargain – i.e., to receive its free-trading Shares.

35. Since July 25, 2022, when Jinhe should have been able to exercise its contractual right to have the restrictive legends removed on the Shares, the share price of Singularity's

common stock has fallen from $3.63/share at close on July 25, 2022 to $2.48 at close on September 26, 2022, a loss of over 30%.

36. In early August 2022, Jinhe informed Singularity and its counsel that Jinhe sought Singularity's assistance in removing the restrictive legends from the Shares.

37. Singularity, though its counsel, responded the same day that it would not assist Jinhe.

38. As a result of Singularity's failure to act, Jinhe has suffered damages of at least $575,000 and potentially over $1.8 million.

## COUNT I
### (Breach of Contract)

39. Plaintiff incorporates each and every allegation set forth above as if more fully set forth herein.

40. The Agreement is a binding contract between Jinhe and Singularity.

41. Jinhe fully performed its obligations under the Agreement by, among other things, introducing Singularity to prospective investors, six of whom ultimately invested over $10.5 million in Singularity.

42. Singularity issued 500,000 Shares of restricted stock to Jinhe but failed and refused to remove the Shares' restrictive legends or to otherwise comply with its other covenants in the Agreement, thereby breaching the Agreement.

43. Singularity failed comply with and breached Paragraph 3 of the Agreement, which obligates Singularity to "deliver an opinion of its counsel to the transfer agent to remove the restrictive legend from the Shares pursuant to Rule 144 so long as all the conditions under Rule 144 have been satisfied."

44. Singularity's refusal to file any required Form 10-Qs with the SEC since February, 2022, which it had previously filed as required, has resulted in the conditions under Rule 144 remaining unsatisfied.

45. Singularity refused to deliver a Counsel's Opinion to its transfer agent to remove the restrictive legend from the Shares.

46. Jinhe complied with any conditions precedent to Singularity's obligation to obtain a Counsel's Opinion.

47. Any other conditions precedent in the Agreement were frustrated or made moot by Singularity's failures to act as described above.

48. By reason of the foregoing breaches and the others described above, Jinhe has been and continues to be damaged in an amount to be determined at trial, but believed to be at least $575,000 and potentially exceeding $1.8 million, plus interest, costs, and fees.

## COUNT II
**(Breach of the Covenant of Good Faith and Fair Dealing)**

49. Plaintiff incorporates each and every allegation set forth above as if more fully set forth herein.

50. The Agreement is a binding contract between Jinhe and Singularity.

51. Jinhe fully performed its obligations under the Agreement by, among other things, introducing Singularity to prospective investors, six of whom ultimately invested over $10.5 million in Singularity.

52. The Agreement contains an implied covenant of good faith and fair dealing requiring each contracting party to do everything necessary to provide the consideration for which the other party has bargained.

53.     The covenant also requires each party to avoid frustrating the reasonable expectations of the other party to the Agreement.

54.     Singularity must avoid doing anything that has the effect of preventing Jinhe from receiving the benefits of the Agreement: 500,000 shares of Singularity common stock eligible, after the six-month Holding Period, to have their restrictive legends removed and sold to the public market.

55.     Singularity breached this covenant by refusing to remain current on its required periodic filings.

56.     Singularity further breached this covenant by failing to take corrective actions in response to the Deficiency Notice.

57.     Singularity had previously complied with its periodic reporting obligations, and its failure and refusal to continue to do so, particularly when threatened with the Deficiency Notice, was outside of the parties' contemplation on entering the Agreement.

58.     Singularity had the means and opportunity to stay current with its periodic reporting obligations, and on information and belief active chose not to.

59.     Singularity's failure has damaged Jinhe by lowering the value of the Shares, making them subject to delisting, and preventing Jinhe from removing the restrictive legends on the Shares and selling them into the public market when the Holding Period expired.

60.     As a result of Singularity's breaches, Jinhe has been and continues to be damaged in an amount to be determined at trial.

**COUNT III**
**(Unjust Enrichment)**

61.     Plaintiff incorporates each and every allegation set forth above as it fully set forth herein.

62. Jinhe conferred a benefit upon Singularity by introducing Singularity to prospective investors, which resulted in investment in Singularity.

63. Singularity voluntarily accepted and retained the benefits of Jinhe's efforts by signing a Stock Purchase Agreement with the identified investors and accepting the capital they invested in Singularity.

64. Singularity retained the benefits of Jinhe's efforts without compensation to Jinhe.

65. It would be against equity and good conscience to allow Singularity to retain the benefit of Jinhe's efforts at Jinhe's expense.

66. As a direct and proximate result of the above-described conduct, Singularity has been unjustly enriched at the expense of Jinhe, and Jinhe has been and continues to be damaged in an amount to be determined at trial.

**COUNT IV**
**(Conversion)**

67. Plaintiff incorporates each and every allegation set forth above as if more fully set forth herein.

68. The Shares are the personal property of Jinhe.

69. As of July 25, 2022, Jinhe's possessory interest in the Shares included a right to freely trade the Shares.

70. Singularity has wrongfully exercised dominion and control over the Shares by failing to take corrective actions in response to the Deficiency Notice.

71. Further, Singularity has wrongfully exercised dominion and control over the Shares by failing to remain current on its required periodic filings.

72. Jinhe desires to have the restrictive legends removed but cannot do so because of Singularity's failures, in derogation of Jinhe's rights.

73. As a result of Singularity's conversion of the Shares, Jinhe has been and continues to be damaged in an amount to be determined at trial.

## COUNT V
### (Quantum Meruit)

74. Plaintiff incorporates each and every allegation set forth above as it fully set forth herein.

75. Jinhe performed services for Singularity in good faith, including by seeking investors for Singularity.

76. Singularity accepted Jinhe's services.

77. Jinhe expected compensation for the services it provided to Singularity.

78. Jinhe did not receive compensation for the services it provided to Singularity.

79. The Shares Singularity provided to Jinhe are nearly worthless because they cannot be sold into the public market, due entirely to Singularity's failure to make its required periodic public filings.

80. Jinhe has been and continues to be damaged in an amount to be determined at trial, including the reasonable value of the services it rendered.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court enter judgment in Plaintiff's favor as follows:

(a) As to Count I, damages in an amount to be determined at trial, but believed to be at least $575,000 and potentially above $1.8 million, plus interest, costs, and fees.

(b) As to Count II, damages in an amount to be determined at trial;

(c) As to Count III, damages in an amount to be determined at trial;

    (d)    As to Counts IV, damages in an amount to be determined at trial;

    (e)    As to Count V, damages in an amount to be determined at trial;

    (f)    Such other and further relief as the Court shall deem just, equitable, and proper under the facts and circumstances of this case.

Dated: New York, New York
       October 6, 2022

                          Respectfully submitted,

                          SICHENZIA ROSS FERENCE LLP

                          */s/ John J. Elliott*
                          Michael H. Ference, Esq.
                          John J. Elliott, Esq.
                          1185 Avenue of the Americas, 31st Floor
                          New York, New York 10036
                          T: (212) 930-9700
                          F: (212) 930 9725

                          *Attorneys for Plaintiffs*